# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9306 | **DATE** | 10/8/2002 |
| **CASE TITLE** | Troy Flowers vs. Burton Wells, Ltd., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant Burton Wells' Amended Motion to Dismiss is GRANTED and this case is DISMISSED without prejudice. The court also hereby relinquishes supplemental jurisdiction under 28 U.S.C. Section 1367 over any remaining state law claims. All pending motions are DENIED as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 9 2002 date docketed | |
| ✓ | Docketing to mail notices. | | | 44 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

F I L E D
OCT - 8 2002
Judge Harry D. Leinenweber
U. S. District Court

TROY FLOWERS,

    Plaintiff,

v.

BURTON WELLS, LTD. and TAURUS MANAGEMENT, INC.,

    Defendants.

Case No. 01 CV 9306

Hon. Harry D. Leinenweber

DOCKETED
OCT - 9 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Troy Flowers ("Flowers") brings this *pro se* complaint against Burton Wells, Ltd., an Illinois corporation ("Burton Wells"), and Taurus Management, Inc., an Illinois corporation ("Taurus"), asserting federal claims under the Fair Housing Act, 42 U.S.C. § 3604, and under 42 U.S.C. §§ 1981, 1985 and 1986. Flowers also asserts a variety of state law claims, including wrongful eviction, negligence, violation of the Chicago Residential Landlord and Tenant Ordinance (codified at Municipal Code of Chicago § 5-12-010, *et seq.*), and violation of the Illinois Security Deposit Return Act (codified at 765 ILCS 710/1, *et seq.*).

Flowers filed his original complaint on December 5, 2001. Taurus filed an answer on January 17, 2002, and Burton Wells filed an amended motion to dismiss based on Federal Rules of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") and 12(b)(6) ("Rule 12(b)(6)") on February 26, 2002. On September 9, 2002, after the amended

motion to dismiss had been fully briefed, but before the court had issued a ruling, Flowers filed an amended complaint (the "Complaint"). To facilitate a prompt resolution of this court's subject matter jurisdiction, on October 1, 2002 the court granted Burton Wells' motion to: (i) bifurcate consideration of the Rule 12(b)(1) issue of subject matter jurisdiction from the Rule 12(b)(6) grounds for dismissal raised in its amended motion to dismiss; (ii) allow its previously-filed amended motion to dismiss, accompanying memoranda of law, and reply brief to stand as to the issue of subject matter jurisdiction, *cf.* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, § 1476 at 558 (2d Ed. 1990) [hereinafter "Wright, Miller & Kane"] ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."); and (iii) file a supplemental response directed to the issue of subject matter jurisdiction.

Before the court, therefore, is Burton Wells' amended motion to dismiss the Complaint based on Rule 12(b)(1). For the following reasons, the court grants the motion and dismisses this case without prejudice.

**BACKGROUND**

According to the Complaint, in 1990 Flowers took up residence in a Chicago apartment building that is now owned by Burton Wells (Flowers alleges that "Taurus or another party" sold the building to Burton Wells on or about July 31, 2000 (Am. Compl. at ¶10)). During 2000, Flowers renewed his lease upon its previous terms. On July 18, 2000, Taurus filed state court eviction proceedings against Flowers in the Circuit Court of Cook County, First Municipal District (the "State Court"), seeking a judgment for possession and money damages of $1,763.20 for unpaid rent. On August 8, 2000, Taurus failed to appear in court and the eviction proceedings were dismissed for want of prosecution. On August 15, 2000, however, Mitchell Asher, an attorney that had previously "performed services" for Burton Wells "in connection with Troy Flowers" (Am. Compl. at ¶7), filed an appearance on behalf of Taurus and had the eviction proceedings reinstated.

On August 21, 2000, the State Court entered judgment against Flowers for possession and for money damages totaling $1,763.20 (the "Adverse Judgment"). On October 2, 2000, a Cook County sheriff enforced the judgment for possession by removing Flowers's belongings from the apartment and placing them on the street. Flowers claims that, "as a result of the eviction" (Am. Compl. at ¶26), he lost personal property valued at approximately $45,000 and suffered various other personal injuries, including pain, suffering

and emotional distress. The Adverse Judgment was vacated on January 11, 2000.

**STANDARD OF REVIEW**

The applicable standard of review for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction depends on the purpose of the motion. See Wright, Miller & Kane, § 1363 at 456-57. If the defendant is merely challenging the sufficiency of the allegations of subject matter jurisdiction, then the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). If, however, as here, the defendant is denying the actual existence of subject matter jurisdiction, then the court may properly "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capital Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (citations omitted); see Wright, Miller & Kane, § 1363 at 456 (where motion "challenges actual existence of subject matter jurisdiction, then the pleading's allegations are merely evidence on the issue").

## DISCUSSION

### *Rooker-Feldman Doctrine*

Before addressing the merits in any case, a federal court must initially resolve the question of its own subject matter jurisdiction. *See State of Ill. v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further."); *cf. Young v. Murphy*, 90 F.3d 1225, 1230 (7th Cir. 1996) (If a "court lack[s] subject-matter jurisdiction over the claim then even an appropriate analysis on the merits is moot."). In bringing claims under 42 U.S.C. §§ 1981, 1985, 1986 and 3604, Flowers purports to invoke the original jurisdiction of this court under 28 U.S.C. § 1331. Flowers' state law claims are provisionally part of this case pursuant to the court's supplemental jurisdiction under 28 U.S.C. § 1367. Pointing to the *Rooker-Feldman* doctrine, however, Burton Wells argues that this court is without subject matter jurisdiction to hear Flowers's claims.

The *Rooker-Feldman* doctrine embodies the principle that, with very limited exception, *see, e.g.*, 28 U.S.C. § 2241, lower federal courts lack the authority to review state court judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 553 (7th Cir. 1999)("[T]he

*Rooker-Feldman* doctrine precludes federal courts from engaging in appellate review of state court decisions or from considering collateral attacks on state court civil judgments."). Within the jurisdictional architecture of our system of judicial federalism, the United States Supreme Court is the only federal court empowered to exercise appellate review over state court decisions. *See* 28 U.S.C. § 1257; *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). "As a result, litigants who feel a state proceeding has violated their constitutional rights must appeal that decision through their state courts and thence to the Supreme Court." *Young*, 90 F.3d at 1230.

The *Rooker-Feldman* doctrine "bars claims seeking equitable relief and money damages equally." *See Fayyumi v. City of Chickory Hills*, 18 F.Supp.2d 909, 915 (N.D. Ill. 1998) (citing *Garry*, 82 F.3d at 1370). Moreover, the *Rooker-Feldman* "doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations." *Long*, 182 F.3d at 554. This is a natural corollary of the *Rooker-Feldman* doctrine, since "claims that are 'inextricably intertwined' with state court judgments of necessity call upon the district court to review the state court decision." *Young*, 90 F.3d at 1231.

Thus, in determining whether the *Rooker-Feldman* doctrine applies in a given case,

> the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment. If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction. If the injury alleged is distinct from that judgment, i.e., the party maintains an injury apart from the loss in state court and not "inextricably intertwined" with the state judgment, res judicata may apply, but *Rooker-Feldman* does not.

*Garry*, 82 F.3d at 1365. "The pivotal inquiry is whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim." *Long*, 182 F.3d at 555 (internal quotation marks omitted). In this connection, the Seventh Circuit has "recognized a distinction between a federal claim alleging injury caused by a state court judgment and a federal claim alleging a prior injury that a state court failed to remedy. A federal court is precluded from considering the former, but not the latter, under the *Rooker-Feldman* doctrine." *Id.* (internal quotation marks omitted).

Finally, it is well-settled that "[a] plaintiff may not circumvent the effect of the *Rooker-Feldman* doctrine simply by casting [his] complaint in the form of a civil rights action." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 997 (7th Cir. 2000) (internal quotation marks omitted); *accord Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993). No matter how the claims are couched, the court "must look beyond the four corners of [the] complaint to discover whether the *Rooker-Feldman* doctrine applies." *Remer*, 992 F.2d at 754.

Applying these principles in the instant case, it is clear that the *Rooker-Feldman* doctrine bars this court from considering Flowers's claims. The gravamen of Flowers's Complaint is that the defendants wrongfully pursued eviction proceedings against him and that, "as a result of the eviction" (Am. Compl. at ¶¶ 26, 47) and "as a result of the enforcement of the [eviction] judgment" (Am. Compl. at ¶ 38), he suffered damages. Put another way, if Flowers had prevailed in state court and never become subject to eviction, he would not have been injured. To consider Flowers's claims, therefore, would "of necessity call upon th[is] district court to review the state court decision." *Young*, 90 F.3d at 1231. This is precisely the type of scenario that the *Rooker-Feldman* doctrine is meant to prevent. *See, e.g., Garry*, 82 F.3d at 1368 (*Rooker-Feldman* applied because "the injury alleged was *only complete* when the state court actually condemned the property") (emphasis supplied); *GASH Assocs. v. Village of Rosemont, Illinois*, 995 F.2d 726, 728 (7th Cir. 1993)(where plaintiff had "no claim independent of the state court's adverse decision" *Rooker-Feldman* "barred the litigation because the plaintiffs' injury *stemmed from the state judgment* – an erroneous judgment, perhaps, entered after procedures said to be unconstitutional, but a judgment nonetheless.") (emphasis supplied); *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993)(*Rooker-Feldman* applied because "but for the tax lien foreclosure judgment in Rock County Circuit Court, [plaintiffs] would have no complaint; they would still have their land and would have suffered no injury."); *Drewicz v. Dachis*, 2001 WL 1223524 at

*3 (N.D. Ill. Oct. 11, 2001) (because plaintiff "is complaining about the eviction itself . . . [and is therefore] alleging injury caused by the state court judgment itself[,] [u]nder the *Rooker-Feldman* doctrine this court is without jurisdiction to consider plaintiff's claims."); *Williams v. City of Joliet*, 2000 WL 968825 at *3 (N.D. Ill. July 12, 2000) (notwithstanding claims of "racial animus and conspiracy," *Rooker-Feldman* applied because plaintiff's loss of property "was the direct result of the . . . state court order which authorized demolition"); *Fayyumi*, 18 F.Supp.2d at 917 ("While the plaintiffs allege that the defendants were motivated by racial animus in seeking to evict the plaintiffs," *Rooker-Feldman* applied because "the injury was *only complete* when the state court issued its ruling." (emphasis in original)).

Although the Seventh Circuit has recognized a limited exception to the *Rooker-Feldman* doctrine under circumstances where a plaintiff did not have a "reasonable opportunity" to raise his federal claims in the underlying state court proceedings, *see Brokaw v. Weaver*, 2002 WL 31040195 at *6-7 (7th Cir. Sept. 13, 2002)("While the *Rooker-Feldman* doctrine bars federal subject matter jurisdiction over issues raised in state court, and those inextricably intertwined with such issues, 'an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings.'" (quoting *Long*, 182 F.3d at 558)), that exception is inapplicable here. The defendants in this case

effected the eviction of Flowers by instituting a forcible entry and detainer action under the Illinois Forcible Entry and Detainer Act (codified at 735 ILCS 5/9-101, *et seq.*)("FEDA"). Section 9-106 of the FEDA provides that, in a forcible entry and detainer proceeding, "[t]he defendant may . . . offer in evidence any matter in defense of the action. No matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." The "distinct[ive] purpose of the forcible entry and detainer proceeding is to determine only who should be in rightful possession." *Miller v. Daley*, 476 N.E.2d 753, 754 (Ill. App. Ct. 1985). "The types of claims which Illinois courts have found to be germane to the issue of possession generally fall into one of four categories: (1) claims asserting a paramount right of possession; (2) claims denying the breach of any agreement vesting possession in plaintiff; (3) claims questioning the validity or enforceability of the document upon which plaintiff's right to possession is based; and (4) claims questioning a plaintiff's motivation for the bringing of the forcible action." *Sawyier v. Young*, 556 N.E.2d 759, 763-64. (Ill. App. Ct. 1990)(citations omitted).

Flowers alleges violations of 42 U.S.C. §§ 1981, 1985, 1986 and 3604, claiming, in essence, that racial animus was the engine that drove the defendants to seek his eviction. The central purpose of each of these statutes is the prohibition of racial and

certain other types of discrimination. *See Tyus v. Urban Search Mgmt.*, 103 F.3d 256, 260 (7th Cir. 1996)("The Fair Housing Act prohibits racial discrimination of all kinds in housing."); *Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir. 1985)(42 U.S.C. §§ 1981 and 1985 directed at punishing "racial or some other type of invidious, class-based discrimination"); *Williams v. St. Joseph Hosp.*, 629 F.2d 448, 452 (7th Cir. 1980)(violation of 42 U.S.C. § 1985 a prerequisite to violation of 42 U.S.C. § 1986). It is clear that claims of racial discrimination and civil rights violations, like the ones set forth in Flowers's Complaint, are germane to an Illinois forcible entry and detainer action. *See Rosewood Corp. v. Fisher*, 263 N.E.2d 833, 838 (1970)(holding that claims of discrimination and civil rights violations are equitable defenses "germane to the distinctive purpose of the forcible entry and detainer actions"); *Marine Park Assocs. v. Johnson*, 274 N.E.2d 645, 648 (Ill. App. Ct. 1971)(holding that allegations of racial discrimination under 42 U.S.C. §§ 3604 and 1982 are "pertinent and germane under *Rosewood* to the distinctive purpose of the [forcible entry and detainer] proceeding"); *Fayyumi*, 18 F.Supp.2d at 912, 917 n.5 ("Illinois caselaw specifically states that a petitioner's motivation in bringing a forcible entry and detainer action is germane to the proceeding."). Accordingly, Flowers certainly would have been afforded a "reasonable opportunity" to raise these claims in the underlying state proceeding. *See* 735 ILCS 5/9-106.

As a final point, the court notes that Count 2 of Flowers's Complaint alleges that the defendants "violated 42 U.S.C. § 1985(3) in that they prevented Flowers from obtaining due process prior to obtaining a judgment against him." (Am. Compl. at ¶ 42). This may well have been a scrivener's error, since an action under 42 U.S.C. § 1985(3) does not lie for a violation of due process. Rather, § 1985(3) is directed only at deprivations of equal protection. *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)(under § 1985(3), plaintiff must prove conspiracy based on "racial, or perhaps otherwise class-based, invidious discriminatory animus" to deprive a person or class of persons of the "equal enjoyment of rights secured by law to all"). Accordingly, the court has interpreted Count 2 of Flowers's Complaint as an equal protection claim under 42 U.S.C. § 1985(3) and, derivatively, 42 U.S.C. § 1986.

However, even if the sprinkling of the words "due process" in Count 2 were somehow to convert that claim into an allegation of violation of due process under 42 U.S.C. § 1983 (notwithstanding Count 2's heading as "42 U.S.C. § 1986," the inclusion of a full excerpt of the text of that statute, and an express allegation of violation of 42 U.S.C. § 1985(3)), it would fail in any event. First, it is clear that Flowers's real injury flowed directly from the eviction judgment, not any alleged denial of due process. Indeed, as noted previously, if the eviction judgment against

Flowers had never been entered by the state court, he would not have suffered injury. In this connection, compare *Young*, where the Seventh Circuit, faced with plaintiff's due process claims, recognized that if the plaintiff had "prevailed in [state court], despite the alleged due process errors, he would have had no injury and no constitutional claim to bring before the district court." *Young*, 90 F.3d at 1231. Accordingly, the court in *Young* held that plaintiff "is really claiming [his] injury resulted from the state court judgment rather than the due process afforded by Illinois probate courts." *Id.*; *cf. Remer*, 205 F.3d at 997 ("A plaintiff may not circumvent the effect of the *Rooker-Feldman* doctrine simply by casting [his] complaint in the form of a civil rights action." (internal quotation marks omitted)). Likewise here, although Flowers dresses his claim up as a due process violation, he is in effect seeking to attack the results of the state court judgment, and this *Rooker-Feldman* will not permit.

Second, even assuming that subject matter jurisdiction were proper in this court, "[d]ue process analysis requires that there be *state action* sufficient to invoke the constitutional guarantee. . . ." *Patkus v. Sangamon-Cass Consortium*, 769 F.2d 1251, 1262 (7th Cir. 1985) (emphasis supplied); *see also Dykema v. Skoumal*, 261 F.3d 701, 705 (7th Cir. 2001)("The purpose of due process is to protect people from the state. . . ."). Flowers has not made any allegation of state action in his Complaint, and it is

therefore dismissible in any event under Rule 12(b)(6) for failure to state a claim upon which relief could be granted. *Cf. Thomas v. 5445 Edgewater Plaza Condo. Asss'n*, 1999 WL 66572 at *4 (N.D. Ill. Feb. 8, 1999).

## CONCLUSION

For the foregoing reasons, Defendant Burton Wells' Amended Motion to Dismiss is **GRANTED** and this case is **DISMISSED** without prejudice. The court also hereby relinquishes supplemental jurisdiction under 28 U.S.C. § 1367 over any remaining state law claims. All pending motions are **DENIED** as moot.

**IT IS SO ORDERED.**

                                            Harry D. Leinenweber, Judge
                                            United States District Court

Date: October 8, 2002